J-S43016-17

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| JOHN RASPATELLO | |
| Appellant | No. 1461 WDA 2016 |

Appeal from the Judgment of Sentence Dated April 27, 2016
In the Court of Common Pleas of Elk County
Criminal Division at No(s): CP-24-CR-0000128-2014

BEFORE: STABILE, J., SOLANO, J., and FITZGERALD, J.[*]

MEMORANDUM BY SOLANO, J.:                FILED DECEMBER 22, 2017

Appellant John Raspatello appeals from the judgment of sentence imposed by the trial court following his convictions on two counts of aggravated assault under 18 Pa.C.S. § 2702(a)(1) ("attempt[ing] to cause serious bodily injury to another, or caus[ing] such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life"), two counts of aggravated assault under 18 Pa.C.S. § 2702(a)(4) ("attempt[ing] to cause or intentionally or knowingly caus[ing] bodily injury to another with a deadly weapon"), and various related offenses.[1] Appellant challenges the weight and sufficiency of

_____

[*] Former Justice specially assigned to the Superior Court.

[1] Appellant was also convicted of two counts of simple assault, two counts of recklessly endangering another person, one count of failing to stop following an accident involving death or personal injury, and one count of reckless driving. See 18 Pa.C.S. §§ 2701(a)(1) and 2705, and 75 Pa.C.S. §§ 3742(a) and 3736(a), respectively.

the evidence and application of the "Deadly Weapon Enhancement" to his sentences for violating Section 2702(a)(1). Upon review, we affirm the trial court's denial of the weight and sufficiency challenges, but vacate the judgment of sentence and remand for resentencing.

We incorporate the following facts from the trial court's opinion:

The incident which resulted in the filing of the charges against [Appellant] occurred at about 7:30 p.m. on December 30, 2013, in the parking lot of Nic's Tobacco at 325 Brusselles Street in St. Marys, Elk County, Pennsylvania, when Douglas Brosius of Brosius Towing and Amy Cloak . . . were in the process of repossessing a 2003 Chevrolet Malibu owned by Suzanne Catalone. Brosius and Cloak were acting at the direction of Holiday Financial which had lent Catalone $2,720.25 on September 25, 2013, and taken title of her 2003 Chevrolet Malibu as collateral for the loan. When Catalone did not make a single payment on the loan[,] Laurie Udavich Temple of Holiday Financial began to inquire about the loan default, but when her collection efforts proved fruitless, she contacted Brosius Towing to take possession of the car, which was believed to be located between and adjacent to Nic's Tobacco and the residence of Suzanne Catalone at 347 Brusselles Street.

[Appellant] was Catalone's boyfriend and lived with her at the Brusselles Street residence. He was known by Ms. Udavich of Holiday Financial as a result of the Catalone loan process and had been designated by Catalone to be her point of contact with Holiday Financial. It was exclusively with him that Ms. Udavich had communications about the loan default. He was therefore familiar with the terms of the loan, the loan default, and the fact that the Catalone car had been pledged as collateral.

Brosius and Cloak arrived at the Brusselles Street location on December 30, 2013 between 7:00 p.m. and 7:30 p.m., and found the car where they were told it would be. Brosius expected to receive the vehicle keys and take possession of the Malibu without incident. When he called Suzanne Catalone, a man answered the phone and Brosius informed the man that he was there to pick up Catalone's car, shortly after which a man exited the house next to Nic's Tobacco and walked to the car with a set of keys. The man was ultimately identified as [Appellant] and when he approached Brosius and Cloak standing next to the car, he asked to be able to retrieve some items of personalty from the inside of the car and Brosius agreed to the request.

2

[Appellant] got into the car and sat in the driver's seat with Brosius standing next to him in the open driver's side front door. Cloak was standing near the closed driver's side rear door and left rear wheel. After putting the key into the ignition, [Appellant] opened the glove box and placed various documents and papers on the passenger seat. He then announced that he had a gun and instructed Brosius to back up. Brosius was not unduly alarmed and told [Appellant] to put the gun in the open where he could see it and that he was not backing up since he was performing a repossession.

When [Appellant] repeated that he had a gun and Brosius did not react by backing out of the open car door, [Appellant] turned the key in the ignition, started the engine, immediately put the car in reverse and accelerated. In the process of doing so, the 330-pound Brosius was struck by the open front door and propelled away from the door. The force of the impact with Brosius was such that the front door hinges were sprung open. With the car continuing rearward, the open front driver's door hit Cloak and knocked her to the pavement . . . Cloak became wedged under the car door and was dragged some two car lengths across the parking lot pavement until she became dislodged and rolled into the yard of the Catalone residence.

[Appellant] immediately drove away from the Brusselles Street location but was later located by Officer Peter Largey of the City of St. Marys Police Department a short distance from the scene.

\* \* \*

Cloak was transported to the Penn Highlands-Elk emergency room by ambulance and was first treated by Dr. George Castellano for multiple trauma. She presented [among other injuries] with a clinical deformity in her chest near her sternum and left shoulder and radiological reports confirmed the dislocation of her sternum and clavicle. Dr. Castellano indicated that had the dislocation been inward, it would potentially have been life-threatening because of the compromise of the heart, blood vessels, and thorax. Even so, the outward dislocation sustained by Cloak presented a threat to life, albeit a somewhat less serious threat than an inward dislocation.

\* \* \*

As a result of Douglas Brosius having been struck by the open front door of the car driven by [Appellant] with enough force to

3

spring the door so it would not close, Brosius testified that he sustained an injury to his low back including the onset of pain. He first received treatment at Penn Highlands-DuBois (DRMC) emergency room on January 3, 2014[,] and was prescribed medication for the back pain. He followed up with five appointments with his family physician to address pre-existing cardiac issues which had been exacerbated, but not caused by, the December 30, 2013 episode, as well as his back, which he described as "very sore." He also received chiropractic treatment for his lower back from Dr. David Gigliotti [beginning in January, 2014,] after the cardiac issues had been addressed.

Some twenty-two months after the incident . . . Brosius was still experiencing daily low back pain which affected his mobility . . . [When Brosius went to Dr. Gigliotti in 2014,] Dr. Gigliotti obtained a history from Brosius that he had been struck by a car door and "had a pretty significant increase in lower back pain, neck pain." Dr. Gigliotti also reviewed a radiology report of an X-ray of Brosius's back taken in early January 2014 five days after the inquiry. The report noted the loss of lumbar lordosis or curve in the lower back.

Trial Ct. Op., 8/30/16, at 2-5, 7-8 (citations to the record omitted). On October 30, 2015, a jury found Appellant guilty of the charged offenses.[2] With respect to Appellant's conviction for aggravated assault under Section 2702(a)(4), the jury made a specific finding that Appellant had used a deadly weapon in committing his crimes.[3]

_____

[2] In a bench trial, the court convicted Appellant of the summary offense of reckless driving. Trial Ct. Op. at 1.

[3] The relevant portion of the verdict read by the jury foreperson was:

Do you find that the [D]efendant used a deadly weapon; yes.

Aggravated assault, deadly weapon; Douglas Brosius, guilty.

Aggravated assault, deadly weapon; Amy Cloak, guilty.

N.T., 10/30/15, at 132-33.

4

During the sentencing proceeding on April 21, 2016, Appellant objected to the trial court's apparent intention to apply the Deadly Weapon Enhancement to his sentence. N.T. Sentencing, 4/21/16, at 15.[4] Without explicitly stating whether it planned to apply the enhancement, the trial court responded by noting that "the jury made a specific finding that a deadly weapon was used." Id. The trial court later stated that under the Sentencing Guidelines, the standard range minimum sentence for an aggravated assault under Section 2702(a)(1) of the Crimes Code, 18 Pa.C.S. § 2702(a)(1), where, as in Appellant's case, the offense gravity score is 11 and prior record score is 4, is "78 to 96 months," and it announced its intention to impose a sentence within the "minimum standard range." Id. at 32. The court ultimately sentenced Appellant to serve consecutive minimum terms of 84 and 96 months' incarceration for the two Section 2702(a)(1) offenses involving Brosius and Cloak, respectively. Id. at 34-35.[5]

Appellant filed a timely post-sentence motion on May 2, 2016, which the trial court denied on August 30, 2016. Order, 8/30/16; Trial Ct. Op. at 1.

_____

[4] As we discuss further below, when a court determines that a defendant possessed or used a deadly weapon in the commission of the offense for which he or she is being sentenced, the Sentencing Guidelines call for application of a "Deadly Weapon Enhancement," which increases the minimum sentence set by the Guidelines. See 204 Pa. Code §§ 303.2(a)(3), 303.10, 303.17(a) (Deadly Weapon Enhancement/Possessed Matrix), 303.17(b) (Deadly Weapon Enhancement/Used Matrix).

[5] Appellant received lesser concurrent sentences for his convictions for aggravated assault under Section 2702(a)(4), not stopping at the scene of the accident, and reckless driving, and received no further penalty for his convictions for simple assault and recklessly endangering another person.

On September 28, 2016, Appellant filed a timely notice of appeal, and he now raises the following issues:

> I.    Whether the [trial] court erred in entering verdicts against the weight of the evidence where [Appellant] acted in lawful defense of property.
>
> II.    Whether the [trial] court erred in entering verdicts based on insufficient evidence to show serious bodily [injury] regarding victim Douglas Bro[s]ious.
>
> III.    Whether the [trial] court erred in applying the deadly weapon enhancement in sentencing Appellant.

Appellant's Brief at 5 (capitalization omitted).

## Sufficiency of the Evidence

We begin with Appellant's second issue, which challenges the sufficiency of the evidence to convict him of aggravated assault of Brosius under Section 2702(a)(1) of the Crimes Code, which provides —

> A person is guilty of aggravated assault if he:
>
> > (1) Attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]

18 Pa.C.S. § 2702(a)(1).[6] Appellant argues that the record contained insufficient evidence to allow the jury to find that Brosius suffered serious bodily injury. Appellant's Brief at 17.

When reviewing a challenge to the sufficiency of the evidence, we view all "evidence admitted at trial in the light most favorable to the verdict winner," asking whether —

_____

[6] Appellant does not challenge the sufficiency of the evidence to convict him of aggravated assault with respect to Cloak and does not challenge the sufficiency of the evidence to convict him of any of the other offenses.

6

there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for [that of] the fact-finder . . . . [F]acts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances . . . . In applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact . . . is free to believe all, part or none of the evidence.

Commonwealth v. Melvin, 103 A.3d 1, 39 (Pa. Super. 2014) (citation omitted).

The Crimes Code defines "serious bodily injury" as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. § 2301. Appellant contends that Brosius' injuries do not meet that definition because they are "similar or the same as injuries . . . he had suffered for a substantial period of time prior to the incident." Appellant's Brief at 17-18. The Commonwealth disagrees, pointing to Brosius' testimony of daily lower back pain that prevents him from bending or stooping and requires regular chiropractic treatment. Commonwealth's Brief at 3-4. It also argues that Brosius' loss of lower lumbar lordosis was a "protracted loss or impairment of the function of any bodily member or organ," meeting the statutory definition of a serious bodily injury. Id. at 5.

In denying Appellant's post-trial challenge on this issue, the trial court reiterated Dr. Gigliotti's testimony that Brosius had a significant increase in

lower back and neck pain, as well as a decrease in lower lumbar lordosis. The trial court noted that Brosius exhibited symptoms after the incident which he had never previously presented. Trial Ct. Op. at 8; N.T., 10/29/15, at 112, 181-82.

We agree with the trial court that the record contained sufficient evidence to allow a jury to find that Brosius suffered serious bodily injury. Appellant relies on one argument: that Brosius' injuries were "similar or the same" as injuries he suffered prior to the incident. He ignores the trial court's finding that Appellant presented new symptoms following the incident and never acknowledges Brosius' loss of lower spine curvature. Viewed in a light most favorable to the Commonwealth, the record substantiates the jury's finding that Brosius suffered a "protracted impairment or loss of function" of a bodily member. N.T. 10/29/15, at 180-81; 18 Pa.C.S. § 2301. We therefore affirm the trial court's finding that Brosius' "serious bodily injury" is sufficiently supported by the evidence.

## Weight Claim

Appellant challenges the weight of the evidence supporting his convictions. He argues that the weight of the evidence supports the view that the use of force for which he was convicted was justified because he was trying to prevent Brosius and Cloak from unlawfully repossessing Catalone's vehicle. Appellant's Brief at 15.

When analyzing a weight of the evidence challenge, we apply the following standard of review:

> Appellate review of a weight claim is a review of the exercise of discretion, not the underlying question of whether the verdict is

8

against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

Commonwealth v. Clay, 64 A.3d 1049, 1055 (Pa. 2013) (emphasis and citations omitted). To prevail on a weight of the evidence challenge, "the evidence must be so tenuous, vague, and uncertain that the verdict shocks the conscience of the court." Commonwealth v. Talbert, 129 A.3d 536, 546 (Pa. Super. 2015) (internal quotation marks and citation omitted), appeal denied, 138 A.3d 4 (Pa. 2016).

Appellant argues that his use of force was a justifiable defense of property because the victims unlawfully attempted to repossess Catalone's vehicle. Appellant's Brief at 5. Reasoning that use of force is justifiable when "necessary to prevent the unlawful carrying away of property," he argues that his victims' repossession "became unlawful when the peace was breached," citing 13 Pa.C.S. § 9609. Id. at 14.[7] Appellant asserts: "After Appellant [entered and refused to leave the] vehicle, things got heated. Although testimony differed between witnesses, reference was made to a gun, with voices raised. Appellant contends that the peace was now breached." Id. The Commonwealth responds that the jury "was at liberty to

_____

[7] The cited statute is a provision of the Uniform Commercial Code that states that, after a default, a secured party may take possession of collateral "without judicial process if it proceeds without breach of the peace." 13 Pa.C.S. § 9609(b)(2).

9

weigh" the testimony of all parties involved, "including due consideration of the justification defense of property instruction given to the jury," and that Appellant's weight of the evidence claim is "without merit as a matter of law." Commonwealth's Brief at 2.[8]

In rejecting Appellant's argument, the trial court concluded that Appellant's use of deadly force was not justifiable and "the jury could assess the evidence regarding the force used by [Appellant] to thwart possession and determine that the operation of the Impala in reverse in such close proximity to Brosius and Cloak constituted deadly force." Trial Ct. Op. at 10-11.[9]

Section 507 of the Crimes Code provides that a person may use force to protect or defend property when he believes that force is "immediately necessary" to "prevent . . . the unlawful carrying away of tangible movable property, if such . . . movable property is, or is believed by the actor to be, in his possession or in the possession of another person for whose protection he acts." 18 Pa.C.S. § 507(a)(1). However, the Code permits use of deadly force in defense of property only if the person seeking the property has entered the actor's dwelling. See id. § 507(c)(4).[10] In this context, "deadly

_____

[8] The jury charge was not included in the certified record.

[9] The court added that (1) Appellant admitted that he was aware that Brosius was repossessing the vehicle and the jury received evidence allowing it to determine that the victims had a claim of right to the vehicle, and (2) Appellant "did not remotely establish" that he was acting with the authority of his girlfriend to prevent the car's repossession.

[10] Section 507(c)(4) provides:

(Footnote Continued Next Page)

force" is "[f]orce which, under the circumstances in which it is used, is readily capable of causing death or serious bodily injury." Id. § 501.

We agree with the trial court that Appellant is not entitled to relief on this claim. Appellant argued his justification defense to the jury, which rejected it.[11] As the trial court concluded, the evidence presented to the jury on this issue was more than sufficient to enable the jury to reach that result. In particular, the jury received sufficient evidence to conclude that Appellant used deadly force even though there had been no entry into his dwelling.[12]

(Footnote Continued) ——————————

    (i)    The use of deadly force is justifiable under this section if:

        (A)    there has been an entry into the actor's dwelling;

        (B)    the actor neither believes nor has reason to believe that the entry is lawful; and

        (C)    the actor neither believes nor has reason to believe that force less than deadly force would be adequate to terminate the entry.

    (ii)    If the conditions of justification provided in subparagraph (i) have not been met, the use of deadly force is not justifiable under this section unless the actor believes that:

        (A)    the person against whom the force is used is attempting to dispossess him of his dwelling otherwise than under a claim of right to its possession; or

        (B)    such force is necessary to prevent the commission of a felony in the dwelling.

18 Pa.C.S. § 507(c)(4).

[11] We note that Appellant does not argue that the trial court's instructions regarding justified use of force were lacking in any way.
[12] As we have already discussed, the evidence was sufficient to establish that Appellant used force that was sufficient to cause Brosius to suffer serious bodily injury. Similarly, the evidence established that Cloak suffered
(Footnote Continued Next Page)

His impermissible use of force deadly force negated Appellant's justification defense.

Upon reviewing the record, we conclude that the trial court did not abuse its discretion in denying Appellant's weight claim.

Deadly Weapon Enhancement

The Sentencing Guidelines, 204 Pa. Code § 303.10(a)(2), provide: "When the court determines that the offender used a deadly weapon during the commission of the current conviction offense, the court shall consider the [Sentencing Guideline matrix in Section 303.17(b)]," which sets forth higher guidelines due to use of the weapon. Appellant contends that the trial court erred in applying this Deadly Weapon Enhancement when imposing its sentences for the two aggravated assault charges under 18 Pa.C.S. § 2702(a)(1). Appellant's Brief at 12.[13] He argues that the standard sentencing range was 60 to 78 months, but the trial court's improper use of the Deadly Weapon Enhancement caused it incorrectly to view the standard

(Footnote Continued) ————————————
serious bodily injury; Dr. Castellano testified that her injury could have been life-threatening, particularly if the dislocation of her sternum had been inward.

[13] The enhancement was not applied and was not applicable to Appellant's convictions of aggravated assault under Section 2702(a)(4), which makes it a crime to "attempt[] to cause or intentionally or knowingly cause[] bodily injury to another with a deadly weapon" 18 Pa.C.S. § 2702(a)(4), because the use of a deadly weapon is already an element of that offense and is therefore factored into its offense gravity score. See 204 Pa. Code § 303.10(a)(3)(vi), (4); Commonwealth v. Childs, 664 A.2d 994, 997 n.2 (Pa. Super. 1995), appeal denied, 674 A.2d 1066 (Pa. 1996). There is no similar impediment to applying the enhancement to aggravated assault under Section 2702(a)(1), which does not require use of a deadly weapon as an element of the crime. See Commonwealth v. Solomon, 151 A.3d 672, 678 (Pa. Super. 2016), appeal denied, 168 A.3d 1265 (Pa. 2017).

minimum range as 78 to 96 months and to impose actual minimum sentences of 84 and 96 months, respectively. Id. The Commonwealth responds that the Deadly Weapon Enhancement was properly applied. Commonwealth's Brief at 1, 5.

The trial court insists that it did not apply the Deadly Weapon Enhancement. Trial Ct. Op. at 12. The court reiterates its statement from the sentencing hearing that Appellant's prior record score of 4 and offense gravity score of 11 led it to apply a standard minimum sentencing range of 78 to 96 months, and that it sentenced Appellant within that range. Id. at 13. The court continues:

> The record of the April 21, 2016 sentencing proceeding is devoid of any discussion of any deadly weapon enhancement by counsel . . . or of the Court applying any such enhancement in its sentences. [Appellant's] conflating the deadly weapon used finding by the jury and deadly weapon sentencing enhancement results i[s] no basis for reconsideration of sentence.

Id. The court adds that "the way [Appellant] drove the [vehicle] transformed [it] into a deadly weapon, but this is of no moment in terms of sentencing [him] in this case." Id. at 12.

After careful consideration, we conclude that the trial court's sentencing calculations do reflect application of the Deadly Weapon Enhancement. We also conclude that the enhancement did apply to the facts of this case. In light of the trial court's apparent belief that the sentence it imposed did not reflect the enhancement, we remand so that the court may have an opportunity to ensure that the sentences it imposed accurately reflect its intended sentencing scheme.

Appellant's argument regarding application of the Sentencing Guidelines' Deadly Weapon Enhancement relates to a discretionary aspect of his sentence, and he therefore must pass a four-part test when invoking this Court's jurisdiction to hear this issue:

> [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether appellant's brief has a fatal defect [under Pa.R.A.P. § 2119(f)]; and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

Buterbaugh, 91 A.3d at 1265-66 (citation omitted) (alteration in original). To avoid the "fatal defect" referenced under this test, the appellant's brief must include a separate concise statement demonstrating that there is a substantial question regarding the appropriateness of the sentence under the Sentencing Code. Commonwealth v. Mouzon, 812 A.2d 617, 621 (Pa. 2002) (citing Pa.R.A.P. § 2119(f)). This Court has found that the application of the Deadly Weapon Enhancement presents a substantial question under the Code. See Buterbaugh, 91 A.3d at 1266 (holding that appellant presented a substantial question where he asserted that his vehicle was not a deadly weapon pursuant to the Deadly Weapon Enhancement).

Appellant filed a timely notice of appeal and preserved his objection during the sentencing proceeding. His brief includes a concise statement pursuant to Rule 2119(f) and thus does not contain a fatal defect. Appellant's Brief at 12. Since he challenges the application of the Deadly Weapon Enhancement, he has presented a substantial question under Buterbaugh. We therefore have jurisdiction to hear his challenge.

14

We "analyze the sentencing court's decision under an abuse of discretion standard." Commonwealth v. Smith, 151 A.3d 1100, 1104 (Pa. Super. 2016) (citation and internal quotation marks omitted), appeal granted, 169 A.3d 1067 (Pa. 2017). Our review of the discretionary aspects of a sentence is confined to the statutory mandates of 42 Pa.C.S. § 9781(c) and (d). Id. Section 9781(c) provides that this Court "shall vacate the sentence and remand the case to the sentencing court" under three circumstances:

> (1) the sentencing court purported to sentence within the sentencing guidelines but applied the guidelines erroneously;
>
> (2) the sentencing court sentenced within the sentencing guidelines but the case involves circumstances where the application of the guidelines would be clearly unreasonable; or
>
> (3) the sentencing court sentenced outside the guidelines and the sentence is unreasonable.

42 Pa.C.S. § 9781(c).[14] Appellant contends that his case meets the first of these circumstances because the trial court applied the Sentencing Guidelines erroneously.

The applicable Sentencing Guidelines are those that were in effect on the date of Appellant's offenses, December 30, 2013. See 204 Pa. Code § 303.1(c).[15] The version of the guidelines in effect at that time became

---

[14] Section 9781(d) states that an appellate court reviewing a sentence shall consider, among other things, "[t]he guidelines promulgated by the commission." 42 Pa. C.S. § 9781(d).

[15] Section 303.1(c) states, in relevant part:

> The sentencing guidelines shall apply to all offenses committed on or after the effective date of the guidelines. Amendments to

(Footnote Continued Next Page)

effective on September 27, 2013. Id. § 303.1(c)(2); see Pa. Comm. on Sentencing, "Adoption of Amendment to the 7th Edition Sentencing Guidelines," 43 Pa. Bull. 3655 (June 29, 2013); id. at 3658 (effective date).[16] A review of those 2013 guidelines discloses that the trial court erred in stating that the standard minimum range for an offense with an offense gravity score of 11 and a prior record score of 4 was "78 to 96 months." See Trial Ct. Op. at 13. The correct standard minimum range for such an offense under the 2013 guidelines was 60 to 78 months. See 43 Pa. Bull. at 3730 (2013 version of Section 303.16(a) of Guidelines). The 78 to 96 month range recited by the trial court actually was the range if the Deadly Weapon Enhancement were applied. See 43 Pa. Bull. at 3733 (2013 version of Section 303.17(b) of Guidelines). Therefore, Appellant is correct in contending that the 84 and 96 month minimum sentences imposed by the trial court were above the standard range in the Guidelines (60-78 months) and instead were within the range for application of the enhancement (78-96 months).

When a sentencing court "fails to begin its calculation of sentence from the correct starting point" in the Sentencing Guidelines, "this Court will remand for reconsideration of sentence." Solomon, 151 A.3d at 676 (citation omitted). Because the trial court has made clear that it intended to

(Footnote Continued) ——————————

the guidelines shall apply to all offenses committed on or after the date the amendment becomes part of the guidelines.

[16] The relevant guideline sentences under the 2013 version of the Guidelines are the same as those in the current version of the Guidelines, which was promulgated effective September 25, 2015. See 204 Pa. Code §§ 303.16(a), 303.17(b).

apply the Sentencing Guidelines without the Deadly Weapon Enhancement, we therefore might remand this case for resentencing. But before doing so, we need to determine whether the trial court was correct in its intention not to apply the Deadly Weapon Enhancement. The Commonwealth contends that the enhancement applies here, and a sentencing court "has no discretion to refuse to apply . . . the deadly weapons enhancement" where a deadly weapon has been used to commit the crime. Commonwealth v. Scullin, 607 A.2d 750, 753-54 (Pa. Super.), appeal denied, 621 A.2d 579 (Pa. 1992); accord Solomon, 151 A.3d at 676; Commonwealth v. Magnum, 654 A.2d 1146, 1149-50 (Pa. Super. 1995). If the trial court had failed to apply the enhancement when such application was required, we would have to remand for resentencing using the enhancement. Solomon, 151 A.3d at 678. We therefore need to determine whether the Deadly Weapon Enhancement was applicable here.

Appellant contends that the enhancement does not apply because Catalone's vehicle did not constitute a deadly weapon "based on the manner in which it was used." Appellant's Brief at 12. To support this claim, Appellant distinguishes the facts in his case with those in Buterbaugh, a leading case on whether a vehicle may be considered a deadly weapon for purposes of the enhancement. In Buterbaugh, the defendant fatally struck a victim with his truck after an altercation in a bar. 91 A.3d at 1251-52. We held that the defendant's use of the vehicle made it a deadly weapon. We reasoned that "the character of an automobile changes based on the particular circumstances surrounding its use," and that the truck "changed to

a deadly weapon the instant [the defendant] backed his vehicle out of the bar's parking lot, accelerated forward at its maximum rate of acceleration, and struck the victim with sufficient force to cause death." Id. at 1269.

In seeking to distinguish Buterbaugh, Appellant asserts that the defendant in that case drove his truck forward at a high speed, "pointed directly at the victim . . . [and] clearly intend[ed] to hit the victim." Appellant's Brief at 18. By contrast, Appellant asserts that the victims here were "struck by the open door of the vehicle," which "was moving backwards" and only struck the victims at the "initiation of . . . movement." Id. at 19. Appellant also cites Smith to argue that "the actor's intent is important when determining whether an object is a 'deadly weapon,'" and that here, "[a]s indicated by Appellant, his intentions were to keep the victims from unlawfully taking possession of the vehicle." Id. at 18-19. In response, the Commonwealth argues that Appellant used his vehicle as a deadly weapon, making application of the enhancement appropriate. Appellee's Brief at 5.[17]

_____

[17] In support of its argument, the Commonwealth points out that the jury made a "specific factual finding" that Appellant used a deadly weapon. Appellee's Brief at 5. The trial court observed, however, that the jury's finding that Appellant used a deadly weapon related only to whether the Commonwealth proved use of a deadly weapon as a necessary element of aggravated assault under 18 Pa.C.S. § 2702(a)(4) ("person is guilty . . . if he . . . attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon"), but that it was not a "finding of an element which increased a penalty." Tr. Ct. Op. at 13. Under the Crimes Code, a "deadly weapon" is —

> [a]ny firearm, whether loaded or unloaded, or any device designed as a weapon and capable of producing death or serious bodily injury, or any other device or instrumentality which, in the

(Footnote Continued Next Page)

The Sentencing Guidelines contain the following definition of a "deadly weapon":

> An offender has used a deadly weapon if any of the following were employed by the offender in a way that threatened or injured another individual:
>
> > (i) Any firearm, (as defined in 42 Pa.C.S. § 9712) whether loaded or unloaded, or
> >
> > (ii) Any dangerous weapon (as defined in 18 Pa.C.S. § 913), or
> >
> > (iii) Any device, implement, or instrumentality capable of producing death or serious bodily injury.

204 Pa. Code § 303.10(a)(2). Under this definition, devices, implements, and instrumentalities not designed to inflict harm can take on "deadly weapon" status based on the manner in which they are used. Commonwealth v. Rhoades, 8 A.3d 912, 917 (Pa. Super. 2010), appeal denied, 25 A.3d 328 (Pa. 2011), cert. denied, 565 U.S. 1263 (2012).[18]

Buterbaugh establishes that a vehicle may constitute a deadly weapon for purposes of the Deadly Weapon Enhancement. See 91 A.3d at

(Footnote Continued) ————————————
manner in which it is used or intended to be used, is calculated or likely to produce death or serious bodily injury.

18 Pa.C.S. § 2301. The definition in the Sentencing Guidelines, which we quote in the text, is slightly different. It is the province of the court, and not the jury, to determine the applicability of the Deadly Weapon Enhancement on the facts of each case. 204 Pa. Code § 303.10(a)(2).

[18] See Scullin, 607 A.2d at 753 (finding that a tire iron became a deadly weapon when thrown at victim); Commonwealth v. Cornish, 589 A.2d 718, 721 (Pa. Super. 1991) (characterizing a fireplace poker used to strike a victim as a deadly weapon); Commonwealth v. Brown, 587 A.2d 6, 7 (Pa. Super. 1991) (holding that a saw used to stab a victim was a deadly weapon).

1270. Our case law further establishes that a "deadly weapon" determination is not barred by the fact that a vehicle moves in reverse and the victims are so close that a high velocity cannot be reached. See Solomon, 151 A.3d at 678. In Solomon, police pulled the defendant over in an alleyway. Id. at 675. The defendant then drove his vehicle in reverse toward the officers who were standing eight feet away, and he barely missed hitting them. Id. at 678. This Court upheld application of the Deadly Weapon Enhancement to the defendant's aggravated assault sentence, reasoning that the vehicle —

> became a deadly weapon when [the defendant] drove it in reverse through an eight-foot-wide opening directly at a person who was standing less than fifteen feet behind him. Here, [the defendant's] motivation for reversing the vehicle is of no moment. If a person drives a vehicle at another person, there is a high probability that the victim will be seriously hurt or killed.

Id. Solomon thus undermines Appellant's proposed means of distinguishing his conduct from prior deadly weapons cases.

In addition, Appellant's reliance on our decision in Smith is misplaced. We held in Smith that when applying the Deadly Weapon Enhancement a person's actual use of an object is determinative; the actor's intentions count only as part of the surrounding circumstances informing actual use. Smith, 151 A.3d at 1107.[19] The defendant in Smith pled guilty to aggravated assault after he drove drunk and hit a pedestrian who was crossing the street. Id. at 1102-03. In upholding the trial court's choice not to apply the Deadly Weapon Enhancement, this Court distinguished between

_____

[19] While an appeal in Smith has been allowed by the Supreme Court, see Commonwealth v. Smith, 169 A.3d 1067 (Pa. 2017), we are tasked to decide this case under the current state of the law, which includes our decision in Smith.

the weight a defendant's intent carries when applying an enhancement for use of a deadly weapon, and its weight when the defendant merely possesses the weapon:

> [U]nlike the DWE [Deadly Weapon Enhancement] for use of a deadly weapon, when a person merely possesses a [deadly weapon] during the commission of a crime, pursuant to § 303.10(a)(1)(iii), . . . the person's intentions with regard to that object are determinative. However, for the sake of applying the DWE for use under § 303.10(a)(2), the person's actual use is determinative, and this use is informed by his intentions.

Id. at 1107 (emphasis added). We reasoned that the defendant intended only to use his car as a mode of transportation, and that "[i]n light of the surrounding circumstances, there is no indication [he] actually used the car for any reason other than conveying himself and his passengers" to their destination. Id.

Here, unlike in Smith, Appellant drove a vehicle at the nearby victims, using it in such a way as would result in a high probability of serious injury or death, thus transforming it into a deadly weapon. See Solomon, 151 A.3d at 678; Buterbaugh, 91 A.3d at 1270. Unlike the defendant in Smith, who was employing the vehicle as a mode of transportation, Appellant has not suggested a similarly innocuous intent. Rather, Appellant attempts to characterize his operation of the vehicle as a justified use of force to prevent seizure of Catalone's vehicle, thereby acknowledging his intention to use the vehicle in an aggressive manner. Moreover, as was noted in Smith, in a "deadly weapon used" inquiry, actual use is determinative, and Appellant's intentions are relevant only insofar as they inform that use. As the Court in Solomon stated, an actor's motivation (such as evasion)

21

matters not in determining whether a motor vehicle is a deadly weapon when he aims that vehicle at another person. 151 A.3d at 678. We therefore conclude that the trial court would have abused its discretion if it had failed to apply the Deadly Weapon Enhancement on the facts of the case before it.

We recognize, of course, that the trial court said it did not intend to apply the enhancement. Given this erroneous view of the applicable sentencing requirements, it may be that the trial court's sentencing scheme would have been different in this case if it had recognized that the Deadly Weapon Enhancement applied. For this reason, we will remand to the trial court for reconsideration of its sentence, though we instruct that its sentencing must begin with application of a sentencing guideline that includes the Deadly Weapon Enhancement. See Commonwealth v. Sutton, 583 A.2d 500, 502 (Pa. Super. 1990) (remanding for resentencing so as not to "clearly upset the trial court's ability to effectuate its original sentencing scheme"), appeal denied, 596 A.2d 156 (Pa. 1991); see also Commonwealth v. Serrano, 61 A.3d 279, 291 (Pa. Super. 2013) (remanding sentencing for all counts "because our vacating the judgment for delivery of cocaine may upset the sentencing scheme").

In conclusion, we affirm the trial court's denial of Appellant's post-conviction motions challenging the weight and sufficiency of the evidence. We vacate Appellant's judgment of sentence and remand for resentencing.

Judgment of sentence vacated and case remanded for resentencing. Judgment affirmed as to Appellant's weight and sufficiency challenges. Jurisdiction relinquished.

Judge Stabile joins the memorandum.

Justice Fitzgerald concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq
Prothonotary

Date:  12/22/2017